RICHARD A. UDALL *et al.* agt. THE LONG ISLAND RAILROAD COMPANY.

Where the venue in a cause is laid in a county where there has been and still is great and extensive excitement in regard to the subject matter for which the suit is brought, and many of the citizens of the county are interested in the event, the venue on that account will be changed.

Where it appears that many of the inhabitants of an *adjoining* county are more or less interested in the subject matter of the suit, and have shared more or less in the excitement, the venue will not be changed to such county.

*April Term,* 1846.
MOTION by defendants to change the venue.

This suit was brought to recover of the defendants damages, alleged to have been sustained by the plaintiffs, by the burning of wood upon a certain tract of wood land of the plaintiffs, situated in the town of Islip in the county of Suffolk: damages laid in the declaration at $10,000; the venue was laid in Suffolk county. Defendants stated that there were then pending in this court, against the defendants, two other suits for precisely like alleged causes of action; and that the aggregate amount of damages, laid in the declarations in this and the other suits, was $31,000; and that each of the plaintiffs resided in the county of Suffolk, and that there were indictments against the defendants, for the burning of the same

property, pending before the court of oyer and terminer of the county of Suffolk. Defendants stated that about forty miles of their railroad run through wood land in the counties of Suffolk and Queens; and such wood land, or a large portion of it, was owned in small lots or parcels by a great number of persons residing in various parts of the counties of Suffolk and Queens; that a *fire occurred in    [*139] the woods in Suffolk and Queens counties, about the month of March, 1845, by which houses, barns, trees and woods, and other property to a large amount were consumed; and that defendants had been well informed and believed that public meetings had been held in the county of Suffolk, for the purpose and with the avowed object of adopting such measures as would enable the numerous persons, claiming to have been damaged by the fire, to recover their damages of the defendants, and that an agent had been appointed or authorized to solicit subscriptions or donations in money from the inhabitants of the county of Suffolk, for the purpose of defraying the expenses of one or more suits against the defendants, for damages sustained by the fire; that the persons who had commenced these suits were persons extensively known, and of extensive influence in, the counties where they resided; that defendants were informed and believed that an opinion had been formed and expressed, and extensively circulated and believed by the inhabitants of those counties, that the defendants were liable to each and every of the plaintiffs in the several suits for all the damages which they had sustained by the burning of their woods and property, and that divers other persons residing in those counties had sustained damages by the burning of their woods and other property, for which they claimed to hold the defendants liable, and presumed they intended to commence suits against the defendants, in case the plaintiffs in these suits recovered. Defendants stated that previous to the actual location of their railroad, very many of the inhabitants of those counties were very desirous of procuring the location of the road to be made through their lands, and that when the road was finally lo-

cated, many of the inhabitants expressed great dissatisfaction that the road was not located through their lands, and in consequence a strong and settled prejudice was formed, and then existed in their minds against the defendants.

Also, that a great degree of prejudice and hostility prevailed throughout those counties against the defendants, and that an organized attempt had been and was then making not only to compel the defendants to pay the amount of all damages sustained by the fires, but to compel them to discontinue the running of their locomotives over the road ; that, in pursuance of such design, publications of an inflammatory character, and designed and calculated to excite the inhabitants of those counties against the defendants, had been circulated in the counties ; that threats had been openly and publicly made, in various parts of the county of Suffolk, that the rails would be forcibly torn up from the defendants' road, [*140] unless the *locomotives discontinued running upon that portion of the road lying within the county of Suffolk. The public meetings mentioned were called for the express purpose of devising measures for carrying out the aforesaid designs ; that propositions for tearing up the rails from the road, and for obstructing the road, were openly and publicly discussed at their meetings, and resolutions were passed of a violent and denunciatory character against the defendants ; that some time in the month of May, 1845, after the occurrence of two fires, which consumed about five thousand acres of wood land, a meeting was called upon the line of the road, for the purposes and with the design to take measures to prevent the defendants from using the road ; about four hundred persons attended the meeting for the purpose ; while the meeting was assembled in an open and public manner, a locomotive with a train of cars attached appeared in sight coming towards the place where the meeting was assembled, and the persons assembled had reason to believe and know that a large number of passengers were upon the train, and the locomotive was moving so rapidly, that any obstruction, that should cause it to be thrown or directed from the

track, would cause great destruction of life and property ; it was proposed to the meeting, by a man of considerable influence in the county of, Suffolk, that a certain switch or turnout, in the immediate vicinity of the place of meeting, should be turned or altered, so that the locomotive and train should be thrown off and directed from the track of the road ; that the accomplishment of the design would inevitably have resulted in the loss of the lives of some of the persons upon the train ; upon the proposition being made, those persons in favor of carrying out the plan were requested to move to a certain position, and a large majority of the persons assembled moved in accordance with such request, and thereby signified their approval of the proposition, and the proposition was about to be and would have been carried into effect, had not a few persons, who were present, interfered, and by very great efforts prevented it from being accomplished.

Defendants were credibly informed that in November last it was proposed to raise a force of two thousand men upon Long Island, to take up the rails of the road ; and after the fires, portions of the rails of the road laid in the county of Suffolk had been upon two occasions torn up and forcibly removed from the railroad by persons or parties whose names were unknown, with the intent to obstruct the locomotive and cars passing over the road, and to embarrass the defendants in the prosecution of their business. Defendants stated that a bill had been filed *in the court of chancery, [*141] and was then pending, seeking to enjoin the defendants from the running of their locomotives. An indictment was also pending against the defendants, for a nuisance in running their locomotives through the county of Suffolk. In consequence of the road having been opened* to Greenport, at the eastern part of Long Island, many persons in the counties of Suffolk and Queens, engaged in transportation by vessels, stages and other conveyances, and also tavern keepers and persons interested in tavern stands, had been arrayed in strong and determined hostility to the interests of the defendants, in consequence of the injury to a

considerable extent of the business and employments of such persons, by means of such transportation and business being done on the railroad : and almost all the farms on Long Island had a portion of the wood land of the Island, and a portion of salt meadow belonging to their farms, either joining or at a remote distance from the farms; in consequence of the division of the wood land among the different land holders on the Island, almost every land holder or farmer had an interest in the preservation of the wood land, and the loss consequent upon the burning of any considerable extent of the wood land fell upon a great number of land holders in various parts of Long Island. And such was the spirit of hostility against the railroad company, throughout the counties of Queens and Suffolk, induced from various causes, that a fair and impartial trial of this cause could not be had in either of the counties of Suffolk or Queens.

A number of affidavits were produced by defendants, substantiating the facts as above detailed, and some important additional facts to show the hostility and excitement of the people in the counties of Suffolk and Queens against the railroad; one was that the defendants had a landing or station for the receiving or discharging of freight and passengers from their cars at Riverhead, and had at this station, in the month of August last, a pump and water tank, over which they had constructed a wooden building, and upon the other side of the track, opposite to the pump and water tank, had a large shed or building containing wood and various implements pertaining to their road; the locomotives of the company were accustomed to get supplies of wood and water at this station; and on Sunday night, the 31st of August last, the buildings of the company were entirely destroyed by fire. Soon after the fire a handbill or notice was found posted up at Riverhead, which read as follows: " Gentleman Fisk, look at this—this is a beginning. One cent reward and you shall know my name." George B. Fisk was president of the Long Island Railroad Company—upon investigation it was

[*142]    generally believed that *the buildings were set on fire

by an incendiary; John Riley, a resident of Suffolk county, who was employed by the defendants, in the capacity of a night watchman, to guard and protect a certain portion of the railroad and bridges of the company lying within Suffolk county, stated that on the night of the 22d of August last he was stationed at a place in the town of Brookhaven called "Carman's River," for the purpose of protecting a bridge which the defendants had erected for the passage of their rail cars over the river; about one-half mile to the east of Carman's river, the defendants had erected a similar bridge over a ravine; this bridge was about twenty feet in height above the bottom of the ravine; the track of the road running over the ravine was supported by a large number of upright posts resting upon the ground below, being ranged in consecutive pairs, and constituted, with the string pieces and timbers of the track, the bridge upon which the rails were laid. About eleven and a half o'clock on the night of the 22nd of August last, he (Riley) heard a noise as of hammering and chopping with axes, which seemed to come from the direction of the ravine bridge; he hastened to the bridge, where he observed some men, to the number of about fifteen, engaged in striking upon the bridge; he challenged them, to which they replied, and soon afterwards he received a blow upon the back which struck him to the ground, and the musket with which he was armed was wrested from him; immediately he was lifted from the ground and taken by a guard of three men and forcibly removed from the spot; the men conducted him away from the bridge towards the westerly one near which he resided; they would not permit him to see their faces; and every attempt to look at them was followed by a blow from some one of them; they exhibited their arms to him, and each of them was armed with a double barreled gun; they then threatened his life if he ever should thereafter be found watching upon the track of the railroad again; they stated that if one hundred men could not cut down the bridge, two hundred would, and it would be dangerous to attempt to protect it. He (Riley) stated that it was with great difficulty

he was enabled to give the alarm and timely notice to the trains of cars then coming from each end of Long Island, to prevent their running upon the bridge; and upon returning to the bridge, he discovered that four of the upright posts, forming two pairs of supporters, had been cut completely off with axes, the bridge was prevented from sinking down, merely by the bands of iron which were fastened to the longitudinal sills upon which the iron rails of the track were laid to hold the sills together at their ends, and a small [*143] weight upon the *bridge, in the part where the supporters were cut off, would inevitably have caused it to break off and sink down; and upon the same occasion about 200 feet of the track of the road, near the bridge cut off, were torn up and removed; there were noticed several wagons and horses at the bridge at this time, which were afterwards heard moving off at a great distance.

The moving papers contained the affidavits of twelve different individuals in Suffolk county, who stated that in their opinion a fair and impartial trial could not be had in this cause in the county of Suffolk, owing to the feeling of prejudice and hostility which prevailed throughout the county. Some of the affidavits stated the same in regard to Queens county.

On the part of the plaintiffs, affidavits were read in opposition to the motion; one of which was made by one of the plaintiffs, which stated that he was well acquainted with the sentiments of the people of the county of Suffolk towards the defendants, that there were undoubtedly many who disapproved of their conduct, in causing damages to the wood land through which their road run, and in many instances refusing to make any reparation therefor, but that a very large majority of the land holders in the county had not sustained any damage from the company, and he believed had no prejudice against them, and fully believed that a fair and impartial trial of the cause could be had in the county of Suffolk; and if the defendants should put the plaintiffs to the necessity of proving that the engines of the company had set fire to the plaintiffs'

woods carelessly, and had thereby caused the damages of which they complained, they would be under the necessity of subpœnaing a large number of witnesses in their behalf; and the additional expense of trying the cause in Westchester county, or even in Kings county, would be very great, where (owing to the large number of causes that were usually on the calendar) they might be detained many days, and finally have to attend several circuits. Also stated that he was extensively acquainted in Queens county, and the people in that county appeared to be, and he believed were, generally friendly to the company; he was not aware nor did he believe that any damages had ever been sustained by the people of Queens county, by fires caused by the locomotives of the company; there was not to exceed two miles of country through which their road run in the county of Queens of at all a combustible character; with this exception, the road runs in that county through a cultivated or grazing country, and the people living on each side of the road were much benefited by the road; it afforded them great conveniences in sending their *produce to market, &c.; and believed that jurors of   [*144] Queens county generally would act impartially on the trial of any cause in which the defendants were concerned, and a trial would be much more convenient for the witnesses and parties in the county of Queens, than in the county of Kings or Westchester, and the number of trials in Queens were generally small. Plaintiffs alleged that the principal object of defendants in changing the venue in this cause, was to delay and embarrass the plaintiffs in the prosecution of the suit. Plaintiffs produced and read the affidavit of John Willis, member of Assembly from Queens county during its last session, which stated that he was well acquainted with many of the inhabitants of Queens county, in all parts of it, and with the general feeling towards the Long Island Railroad Company; he had never discovered, nor did he believe that there was any general prejudice against the company among the inhabitants of Queens county; on the contrary, he believed the company was generally popular there, and he had no

doubt but that as fair and impartial a trial of this cause might be had in that county as in any county in the state. Plaintiffs then produced and read the affidavits of twenty-one different individuals of Queens county, stating the same facts as the last. Plaintiffs stated that they were anxious and willing that a fair and impartial trial should be had in this suit, and for that purpose would consent that the venue should be changed to the county of Queens.

A. TABER, *defendants' counsel.*
JOHN DIKEMAN, *defendants' attorney.*
A. G. CHATFIELD, *plaintiffs' counsel.*
S. B. STRONG, *plaintiffs' attorney.*

BEARDSLEY, Justice. Was clearly of opinion, from the facts before him, that justice required this cause should be tried in some other county than either Suffolk or Queens; and if the plaintiffs chose Richmond in preference to Westchester, they might take Richmond. Rule was accordingly entered changing the venue from Suffolk to Richmond county.